**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

WAMEL ALLAH,

                              **Plaintiff,**                    04-CV-0912A(Sr)

**v.**

**CAPTAIN MALENSKI, et al.,**

                              **Defendants.**

─────────────────────────────

### DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #14.

Currently before the Court is plaintiff's motion for partial summary judgment (Dkt. #31), and defendants' motion for summary judgment.  Dkt. #35.  For the reasons set forth below, plaintiffs' motion is denied and defendants' motion is granted.

### BACKGROUND

Corrections Officer ("C.O."), Paul Dentinger declares that he began processing plaintiff into the Wyoming Correctional Facility ("Wyoming"), upon plaintiff's arrival from the Attica Correctional Facility ("Attica"), at approximately 8:30 p.m. on February 17, 2004 and discovered 114 copies of a counseling memorandum of a DOCS' employee at Arthur Kill Correctional Facility ("Arthur Kill"), among plaintiff's possessions.  Dkt. #38, ¶ 3.  Inmate Rule 116.12 prohibits inmates from possessing or distributing facility documents without authorization.

C.O. Dentinger also observed two State-issued winter coats among plaintiff's possessions. Dkt. #38, ¶ 5. Only one State-issued winter coat is permitted. Dkt. #38, ¶ 5. C.O. Dentinger observed that the coats were "identical to outside gang State-issed coats with a quilted liner, hood zipper and no label indicating any brand name." Dkt. #38, ¶ 5. In response to plaintiff's complaint to the Commissioner's Office, C.O. Dentinger informed Captain Gilbert, noted that the confiscated coat

> had B-24[1] as a tag on the inside of this coat. All state issue coats like this one have B-24 sewed in them to identify them from state or personal coats.

Dkt. #45-3, p.12. C.O. Dentinger notes that

> Such jackets are only issued to inmates during the winter based upon an outdoor working assignment which plaintiff did not have. Given my years of service, I am very familiar with State-issued property. Moreover, for security purposes, inmates are prevented from obtaining quilted materials through the package room which would have been the only other means plaintiff could have obtained the jacket.

Dkt. #38, ¶ 5. C.O. Dentinger's supervisor, Sergeant Johnson, similarly declared that

> given my years of experience in the draft area, the confiscated coat was clearly a State-issued outside gang coat. Plaintiff did not have a work assignment outside the facility, so he was not allowed to have the confiscated coat. It was distinguished with a quilted liner, zippered hood and no label indicating any brand name. It also has a number assigned to it which the State shop does prior to issuing the coat to outside gang inmates. Moreover, for security purposes, inmates are prevented from obtaining quilted materials through the package room because they could hide contraband in them. Because plaintiff had another State-issued coat, he violated inmate rule 113.20 concerning excessive State property.

Dkt. #39, ¶ 6.

---

[1] The writing inside of the coat is set forth in this Decision and Order as it appears in the record before the Court without judgment as to why that writing is variously identified as B04; B24 or B34.

C.O. Dentinger issued an inmate misbehavior report charging plaintiff with violation of inmate rule 116.12 (Possessing, Distributing Facility Document without Aurhtorization), for possession of 114 copies of the counseling memorandum and violation of inmate rule 113.20 (Excessive State Clothing), for possession of the jacket. Dkt. #25, p.6; Dkt. #38, ¶ 6. Sgt. Johnson endorsed the misbehavior report. Dkt. #38, ¶ 6; Dkt. #39, ¶ 7.

Sgt. Johnson and C.O. Dentinger declare that C.O. Patrick was not involved in the processing of plaintiff because she worked the prior shift. Dkt. #38, ¶ 3; Dkt. #39, ¶ 3. C.O. Patrick declares that she left Wyoming at 3:00 p.m. on February 17, 2004, as scheduled, and did not return to Wyoming until February 21, 2004. Dkt. #41, ¶ 3. Although prison records indicate that C.O. Patrick escorted plaintiff to Buffalo for court proceedings in September of 1997, C.O. Patrick denies any specific recollection of plaintiff. Dkt. #41, ¶ 4.

Captain Malenski conducted plaintiff's Tier III disciplinary hearing on February 19, 23 & 24, 2004. Dkt. #25, p.8; Dkt. #40, ¶ 2. Plaintiff argued that the coat was not a state coat, but had been purchased from J. L. Marcus and delivered to him *via* the package room at Arthur Kill in July of 2001. Dkt. #25, pp.11-12. Plaintiff stated that he received the coat in Arthur Kill, was required to send the hood home by officials at Groveland Correctional Facility ("Groveland"), and transferred the coat with his possessions to Attica prior to his transfer to Wyoming. Dkt. #25, pp.13-14 & 36. With respect to the counseling memo, plaintiff stated that it was an exhibit to 20 copies of a

complaint provided to him by his lawyer. Dkt. #25, pp.16-17. Captain Malenski noted there was no mark identifying the counseling memo as a court document or exhibit. Dkt. #25, p.17. Plaintiff responded that another bag containing his legal work would identify the counseling memo as a court exhibit, so Captain Malenski adjourned the hearing to review plaintiff's property record and allow for the remainder of plaintiff's property to arrive at Wyoming. Dkt. #25, p.18.

When the hearing resumed on February 23, 2004, Captain Malenski informed plaintiff that property records indicated he received a green coat at Arthur Kill in 1987 after removing the quilted lining. Dkt. #25, pp.20-21. Plaintiff indicated that he no longer possessed that coat, but had subsequently purchased the coat at issue from the J. L. Marcus catalog. Dkt. #25, p.22. Captain Malenski noted there was nothing in plaintiff's package room folder with respect to a coat from J. L. Marcus. Dkt. #25, p.22. Captain Malenski noted that the coat confiscated from plaintiff upon his arrival at Wyoming, was

> a quilted parka with no liner, well, with no zip out liner, no removable liner. It is, it has the quilted liner that's part of the actual coat and it is identical to the state issue coat. There is no company label in the back of the coat, showing that it came from any company. The only label on the back says B-04 and it appears to have been added to that coat but there is no company coat logo [sic] it is similar to what is done for a state shop issue. And it is identical to what we issue to the outside inmates at this facility.

Dkt. #25, p.21.

Plaintiff asked to call a Lieutenant from Arthur Kill as a witness to verify that he gave plaintiff the coat and also asked to call the Deputy Superintendent of Groveland to testify that the coat belonged to plaintiff. Dkt. #25, p.27. Captain Malenski adjourned the hearing because plaintiff had not yet received the remainder of his personal property. Dkt. #25, p.26.

On February 24, 2004, plaintiff presented Captain Malenski with a copy of his discovery demand in an action pending in the Eastern District of New York which sought documents related to any misconduct report against the correction officers named as defendants, stating that the counseling memo was produced in response to that demand. Dkt. #25, pp.29-30.

With respect to the coat, plaintiff repeated that he had worn that coat for three years, prompting Captain Malenski to opine that he had inspected the coat and found it "in perfect condition without a speck of dust, inside the pockets, no discoloration, no marks on the collar, no evidence of it ever having been worn." Dkt. #25, p.34. Captain Malenski further noted, "no evidence of anything in those pockets . . . They are crisp and bright and white." Dkt. #25, p.34. Plaintiff responded that he is clean and neat and careful with his possessions. Dkt. #25, pp.34 & 40.

Plaintiff informed Captain Malenski that another inmate at Wyoming had the same coat from J. L. Marcus and that inmate was called as a witness. Dkt. #25, p.36. The inmate informed Captain Malenski that he received his coat, which Captain

Malenski acknowledged was "identical" to plaintiff's, from J. L. Marcus. Dkt. #25, pp.38-39. Captain Malenski telephoned the State Shop and was informed that the

> identifying tag in the model of the state coat is B-34. Which is exactly what is in the model of this coat. Which is also . . . in inmate Elwadi's coat. I called the package room, just now, you were present for me calling them . . . The package room officer pulled out the J. L. Marcus catalog. The J. L. Marcus catalog identifies a green hooded zip up parka. But does not identify any particular number, in regards to the parka.

Dkt. #25, p. 39. Captain Malenski reiterated that his review of plaintiff's personal package room folder did not reveal any purchase of a coat from J.L. Marcus, even though the record revealed extensive purchases of other items from J.L. Marcus. Dkt. #25, pp.39 & 49. Captain Malenski also reiterated that although plaintiff claimed to have purchased the coat in 2001, the coat was "in absolutely perfect condition." Dkt. #25, p.40.

Plaintiff requested Ms. Crawford, program committee chair at Groveland, as a witness to testify that plaintiff wore the coat to work as a peer counselor for Transitional Services at Groveland in 2001. Dkt. #25, p.41. Ms. Crawford, who was now at Wyoming, recognized plaintiff, but did not recognize the coat. Dkt. #25, pp.42 & 44. Plaintiff requested two additional witnesses – Lt. Cauldwell at Arthur Kill and Deputy Superintendent Perkins at Groveland – to verify plaintiff's possession of the coat at those facilities, but Captain Malenski accepted plaintiff's statement that he received a green coat at Arthur Kill and denied the witnesses on the ground that they could not identify this coat as the coat received at Arthur Kill over the telephone. Dkt. #25, pp.49, 52 & 56.

Captain Malenski found plaintiff guilty of both charges, explaining that plaintiff's package room file failed to identify any purchase of a coat and that plaintiff was unable to produce an authorization to possess the counseling document. Dkt. #25, p.52. Captain Malenski confined plaintiff to the Special Housing Unit, with loss of phone, packages and commissary privileges, for 75 days, stating that the disposition was rendered to reflect plaintiff's attempt to circumvent proper procedures and his extensive disciplinary record and disregard for regulations. Dkt. #25, pp.53 & 57. Upon review of the Superintendent's Hearing, DOCS affirmed the disposition. Dkt. #25, p.59. Plaintiff's article 78 petition challenging the denial of witnesses and alleging bias by Captain Malenski was denied by the New York State Supreme Court, County of Wyoming, on October 26, 2004. Dkt. #25, p.71.

Plaintiff was transferred to Attica on March 2, 2004. Dkt. #42, ¶ 6.

By letter dated May 13, 2004, the J. L. Marcus Company provided plaintiff with a copy of his order dated June 15, 2001 for an olive zip off hood parka which had been sent to plaintiff at Arthur Kill. Dkt. #31, p.25.

Plaintiff commenced this action on November 17, 2004, alleging that his constitutional rights were violated when defendants confiscated legal documents and a green parka coat, fabricated a misbehavior report and found him guilty of violating prison rules in retaliation for plaintiff's prosecution of a lawsuit in the Eastern District of New York. Dkt. #1. In his complaint, plaintiff alleges that upon his arrival at Wyoming,

C.O. Patrick informed plaintiff that she remembered him from 1997 and that he would "be placed in the box [as] soon as the opportunity presented itself."  Dkt. #1, ¶ 29. Plaintiff also alleges that C.O. Dentinger accused plaintiff of being a "proliferator [sic] litigator and trouble maker" and threatened "to see to it that [he was] placed in the box." Dkt. #1, ¶ 19.  Plaintiff also alleges that Sergeant Johnson accused plaintiff of being a "proliferator litigator and trouble maker" and threatened to make sure plaintiff did "not get the confiscated documents . . . or the parka green coat back" and that plaintiff was "placed in the box."  Dkt. #1, ¶ 22.  Plaintiff further alleges that C.O. Patrick informed plaintiff that she would let Captain Malenski "know that in 1997 she escorted the plaintiff to United States District Court [in] downtown Buffalo in another case" and that defendant Malenski informed plaintiff that he had "already spoke to C.O. Patrick about" plaintiff and was "sending [plaintiff] to the box."  Dkt. #1, ¶ ¶ 27 & 30.


## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Due Process Claim**

To state a cognizable § 1983 due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313, 316 (2d Cir. 1996).

-9-

<u>Liberty Interest</u>

Defendants argue that plaintiff's confinement to SHU for 75 days is insufficient to implicate due process rights. Dkt. #37, pp.9-10. Defendants also note that plaintiff failed to grieve any atypical conditions of confinement while he was housed in SHU. Dkt. #37, p.10.

Plaintiff responds that his security classification was changed from medium to maximum and that this prevented him from participating in the Wyoming College program or applying for outside clearance programs and also prevented him from earning time toward eligibility for participation in the work release program. Dkt. #45, p.8. Plaintiff also notes that he was denied privileges such as telephone, commissary, the opportunity to shower more than three times a week, recreation activities and attendance at religious services. Dkt. #45, p.10.

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004), *quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id., quoting Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999).

In light of this standard, the Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights" and has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id*. at 64-65. As a result, district courts are "required to examine the conditions of confinement in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotations omitted). The district courts are "required to examine the actual circumstances of confinement and to identify with specificity the facts upon which their conclusions are based." *Id.* at 134 (internal quotations omitted). A detailed factual record is required unless the period of time spent in SHU was exceedingly short – less than 30 days – and there is no indication that the plaintiff endured unusual SHU conditions. *Id.* at 135. "Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law." *Id.* at 134.

As defendants have presented no evidence regarding typical conditions of confinement in SHU as compared to the general population and the actual conditions of plaintiff's SHU confinement, the Court lacks a sufficient factual record upon which to assess whether plaintiff has demonstrated a liberty interest with respect to his

confinement in SHU for 75 days.  Accordingly, defendants' motion is denied on this ground.

Sufficiency of Process

Plaintiff argues that his constitutional right to due process was denied when he was not permitted to call witnesses during his disciplinary hearing.  Dkt. #31, p.1 & Dkt. #37, p.13.  Plaintiff also argues that the record clearly demonstrates that he was the owner of the coat and that he was entitled to possess the counseling memorandum because he received it during discovery in his lawsuit in the Eastern District of New York.  Dkt. #31, p.2.  Plaintiff further argues that Captain Malenski was not impartial.  Dkt. #37, p.12.

In support of his argument that he received the counseling memo during discovery, plaintiff submits a copy of the docket sheet from that case as evidence that the counseling memo pertains to a defendant in that case and notes that the docket sheet states that defendants were "to turn over documents as to [that  C.O.]" and that defendants, including that C.O., filed interrogatory responses.  Dkt. #31, pp.16 & 18.

Defendants argue that plaintiff was afforded sufficient process during the course of his disciplinary hearing.  Dkt. #37, pp.10-11.

**Witnesses**

In *Wolff v. McDonnell*, the Supreme Court of the United States determined that an

> inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

418 U.S. at 566. In reaching this conclusion, the Court recognized that

> Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.* In exercising that discretion, prison officials must be able to

> explain, in a limited manner, the reason why witnesses were not allowed to testify, . . . either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte v. Real*, 471 U.S. 491, 497 (1985). A hearing officer may rationally exclude witnesses or documents when they would be irrelevant or unnecessary to a determination of the issues in the disciplinary hearing. *Kalwasinski*, 201 F.3d at 109. The burden is on the prison official to demonstrate "the rationality of his position." *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990).

In the instant case, Captain Malenski's decision to exclude Lt. Cauldwell at Arthur Kill and Deputy Superintendent Perkins at Groveland was rational as Captain Malenski accepted plaintiff's statement that he received a green coat at Arthur Kill. Dkt. #25, pp.49. Captain Malenski's determination that these witnesses would be unable to

identify the confiscated coat as the coat plaintiff received at Arthur Kill while testifying over the telephone from their respective correctional facilities is also rational, especially in light of Ms. Crawford's inability to recognize the confiscated coat despite her ability to attend the hearing and observe plaintiff and the coat.  Dkt. #25, pp.42 & 44.  Captain Malenski's decision to deny Lt. Cauldwell and Deputy Superintendent Perkins is also rational in light of Captain Malenski's determination that the confiscated coat was "in absolutely perfect condition," and could not, therefore, have been the same coat plaintiff received at least three years earlier.  Dkt. #25, p.40; Dkt. #40, ¶ ¶ 10 & 12.

### Sufficiency of Evidence

The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.

*Superintendent v. Hill*, 472 U.S. 445, 457 (1985).  In the instant case, Captain Malenski's determination that the confiscated coat was state-issued property is supported by the observations of C.O. Dentinger and Sergeant Johnson that the coat was "identical to outside gang State-issued coats with a quilted liner, hood zipper and no label indicating any brand name," the lack of any documentation in plaintiff's package room folder with respect to receipt of a purchased coat within the relevant time frame and regulations preventing inmates from receiving coats with quilted linings sewn into the coat from outside vendors. Dkt. #25, p.21-22, 39 & 49; Dkt. #38, ¶ 5; Dkt. #39, ¶ 6.  In addition, although plaintiff established that he was prosecuting a lawsuit in the Eastern District of New York against the corrections officer named in the counseling

memo, plaintiff was unable to produce evidence that the counseling memo was received during the course of discovery in that litigation.  As Captain Malenski noted, with respect to plaintiff's claim during the course of the disciplinary hearing that the counseling memo had been attached as an exhibit to the complaint, there was no mark on the counseling memo identifying it as a court document or exhibit.  Dkt. #25, p.17.

**Impartiality of Hearing Officer**

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer."  *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *see Wolff*, 418 U.S. at 570-71; *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir.1994).  An impartial hearing officer "is one who, *inter alia*, does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen."  *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir.1990); *see Francis*, 891 F.2d at 46 ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well recognized, however, "that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."  *Allen*, 100 F.3d at 259; *see Francis*, 891 F.2d at 46 ("Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process.").  For example, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally."  *Allen,* 100 F.3d at 259; *see Francis*, 891 F.2d at 46.

Nothing in the transcript suggests that Captain Malenski had predetermined the outcome of plaintiff's disciplinary hearing. Captain Malenski adjourned the hearing to review plaintiff's package room folder to determine whether there was any record of plaintiff receiving a coat from J. L. Marcus and to afford plaintiff an opportunity to receive all his personal property and produce evidence identifying the counseling memo as an exhibit produced with respect to plaintiff's lawsuit in the Eastern District of New York. Dkt. #25, pp.18, 22 & 26. Captain Malenski allowed plaintiff to call as a witness another inmate at Wyoming who claimed to have received his coat from J.L. Marcus and contacted the State Shop and the package room to determine the identifying characteristics of state-issued coats and coats from J.L. Marcus. Dkt. #25, pp.36-39. Captain Malenski also allowed plaintiff to call as a witness the program committee chair at Groveland to question her with respect to her recollection as to whether plaintiff possessed the coat at Groveland. Dkt. #25, pp.41-44. Such consideration does not suggest partiality.

As the Court is satisfied that plaintiff received all the process he was due in the course of his disciplinary hearing, defendants' motion for summary judgment is granted with respect to plaintiff's claim of denial of due process.

**Retaliation**

Defendants argue that plaintiff cannot demonstrate a constitutional right to possess the counseling memo or coat or that defendants confiscated the counseling memo and jacket because of plaintiff's exercise of his constitutional rights. Dkt. #37,

pp.17-21.  Defendants also argue that their confiscation of the counseling memo and jacket was appropriate regardless of their motivation.  Dkt. #37, pp.22-23.

Plaintiff responds that defendants issued the misbehavior report and conducted a biased hearing to retaliate against plaintiff for his legal action in the Eastern District of New York.  Dkt. #45, p.14.

> A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.  The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation.  The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.

*Gayle v. Gonyea,* 313 F.3d 677 (2d Cir. 2002) (internal quotations and citations omitted).  "Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

The Court of Appeals has "noted that the conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration . . .." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).  Moreover, the Court of Appeals has recognized that prisoners' claims of retaliation should be examined "with skepticism and particular care" given the "near

inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." *Id.* at 873. Thus, plaintiff's allegation that defendants issued the misbehavior report and conducted a biased hearing in retaliation for filing lawsuits in the Eastern and Western Districts of New York is sufficient to establish constitutionally protected conduct. However, even assuming the truth of plaintiff's allegations that defendants were looking for a reason to punish plaintiff because of his history of litigation, there is no dispute that C.O. Dentinger discovered 114 copies of an Arthur Kill C.O.'s counseling memorandum in the ordinary course of processing plaintiff and his belongings into the facility. Moreover, the evidence was sufficient for Captain Malenski to determine that plaintiff was in possession of excessive state property. Thus, the misbehavior report and resulting discipline was warranted regardless of defendants' motivations. As a result, defendants' motion for summary judgment is granted with respect to plaintiff's retaliation claim.

**Personal Involvement of C.O. Patrick**

C.O. Patrick argues that she was not present when plaintiff's personal belongings were searched and had no contact with plaintiff or knowledge that a misbehavior report had been filed against him. Dkt. #37, p.26.

Plaintiff affirms that although his personal property was not processed until C.O. Patrick's shift was over, he arrived in the draft area in the morning. Dkt. #47, pp.9-10. Plaintiff's complaint alleges that C.O. Patrick "knowingly, willfully, [sic] intentionally condone [sic] and participated in retaliatory deprivations in violation of plaintiff's [constitutional] rights" by indicating upon plaintiff's arrival at Wyoming "that she remember [sic] the plaintiff from 1997 and, that the plaintiff will be placed in the box as soon as the opportunity presented itself." Dkt. #1, ¶ ¶ 16 & 29. In opposition to C.O. Patrick's motion, plaintiff reiterates that C.O. Patrick "indicated upon plaintiff['s] arrival that she had remember [sic] the plaintiff from 1997, and that the plaintiff would be placed in the Box as soon as the opportunity presented it self [sic]." Dkt. #45, p.21. Plaintiff's complaint also alleges that on February 23, 2004, C.O. Patrick informed plaintiff that he had no authorization to possess the counseling memo and that she would "let defendant Malenski know that in 1997 she escorted the plaintiff to United States District Court downtown Buffalo in another case" and that Captain Malenski informed plaintiff prior to the commencement of the disciplinary hearing that he had "already spoke to Officer Patrick about you." Dkt. #1, ¶ ¶ 27 & 29.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the

violation and failed to remedy the wrong; (3) created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Assuming as true plaintiff's allegation that C.O. Patrick threatened to place plaintiff in the special housing unit as soon as the opportunity presented itself and advised Captain Malenski that she had previously escorted plaintiff to district court, that is insufficient to establish personal involvement in the alleged denial of due process in the course of plaintiff's disciplinary proceeding. Plaintiff does not allege that C.O. Patrick was present during the inventory of plaintiff's personal property, discovery of contraband or issuance of the misbehavior report nor is it alleged that she participated in the disciplinary hearing with respect to that misbehavior report. As a result, C.O. Patrick's motion for summary judgment with respect to plaintiff's denial of due process and retaliation claims is also granted on the ground of lack of personal involvement. *See Champion v. Artuz*, 76 F.3d 483 (2d Cir. 1996) (corrections officers who did not participate in cell search or issue misbehavior report granted summary judgment on plaintiff's claim that cell search was in retaliation for exercise of constitutional rights).

**Conspiracy**

Defendants argue that plaintiff's claim of conspiracy is wholly conclusory and fails to suggest any agreement to violate plaintiff's constitutional rights. Dkt. #37, pp.23-25.

Plaintiff responds that defendants agreed to subject plaintiff to retaliatory deprivations. Dkt. #37, p.17. Plaintiff also argues that defendants' conspiracy "was motivated by class-based discriminatory animus" in order to hinder plaintiff's exercise of his constitutional right to petition the government to redress grievances. Dkt. #45, p.18.

"To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds that violated the plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts." *Duff v. Coughlin*, 794 F. Supp. 521, 525 (S.D.N.Y. 1992) (internal quotation omitted). "To establish that a conspiracy existed plaintiff must demonstrate the defendants 'agreed' or 'reached an understanding' to violate his rights." *Id.* "Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857 (1983). As plaintiff does not allege and the record does not reflect any agreement among the defendants, summary judgment is appropriate with respect to plaintiff's vague allegations of conspiracy. The Court notes that plaintiff's complaint neither asserts a cause of action pursuant to 42 U.S.C. § 1985(3) nor alleges facts in

support of such a cause of action.  *See, e.g., Porter v. Selsky*, 287 F. Supp.2d 180,

(W.D.N.Y. 2003) (To state a conspiracy claim under 42 U.S.C. § 1985, plaintiff must

allege, *inter alia*, "some racial or other class-based discriminatory animus underlying

defendants' actions.").


## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment

(Dkt. #31), is denied and defendants' motion for summary judgment (Dkt. #35), is

granted.  The Clerk of the Court is directed to enter judgment in favor of the

defendants.


The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this Order would not be taken in good faith, and leave to appeal to the

Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438

(1962).  Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.


**SO ORDERED.**

DATED:     Buffalo, New York
             June 10, 2010

                         **s/ H. Kenneth Schroeder, Jr.**
                         **H. KENNETH SCHROEDER, JR.**
                         **United States Magistrate Judge**